# EXHIBIT D



⚠ Caution
As of: June 15, 2020 7:04 PM Z

# *Acrisure Holdings, Inc. v. Frey*

United States District Court for the District of Delaware

March 25, 2019, Decided; March 25, 2019, Filed

C. A. No. 18-1514-RGA-MPT

**Reporter**
2019 U.S. Dist. LEXIS 48639 *; 2019 WL 1324943

ACRISURE HOLDINGS, INC., and ACRISURE, LLC, Plaintiffs, v. CORY FREY Defendant.

**Counsel:** [*1] For Acrisure Holdings, Inc., Acrisure, LLC, Plaintiffs: John M. Seaman, LEAD ATTORNEY, Abrams & Bayliss LLP, Wilmington, DE.

For Cory Frey, Defendant: Jennifer Gimler Brady, Jesse Leon Noa, LEAD ATTORNEYS, Potter Anderson & Corroon, LLP, Wilmington, DE; Paul T. Trimmer, PRO HAC VICE.

**Judges:** Mary Pat Thynge, Chief United States Magistrate Judge.

**Opinion by:** Mary Pat Thynge

## Opinion

### REPORT AND RECOMMENDATION

### I. INTRODUCTION

On September 28, 2018, plaintiffs Acrisure Holdings, Inc. ("Acrisure Holdings") and Acrisure LLC ("Acrisure LLC") (collectively, "plaintiffs") brought this trade secret and breach of contract action against defendant Cory Frey ("Frey" or "defendant"), alleging that defendant injured plaintiffs when he left the employment of a non-party subsidiary of Acrisure LLC, misappropriated confidential information, including a client list, and began operating an insurance agency in Las Vegas, Nevada, in direct competition with the non-party subsidiary of Acrisure LLC.[1] Plaintiffs pursue six causes of action:

- Count I. Misappropriation under the *Defend Trade Secrets Act*;[2]

- Count II. Misappropriation under the *Delaware Uniform Trade Secrets Act*;[3]

- Count III. Breach of a covenant not to compete;[4]

---

[1] *See generally* D.I. 1; D.I. 9; D.I. 12.

[2] D.I. 1 at ¶¶ 26-32.

[3] *Id.* at ¶¶ 33-38.

[4] *Id.* at ¶¶ 39-43.

- Count IV. Breach of [*2] contractual confidentiality provisions;[5]
- Count V. Conversion;[6] and
- Count VI. Tortious interference with prospective economic advantage.[7]

Presently before the court are the following motions: (1) defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction (D.I. 8); (2) defendant's motions in the alternative for jurisdictional discovery (D.I. 9) and for transfer to the United States District Court for the District of Nevada (D.I. 8); (3) plaintiffs motion for a preliminary injunction (D.I. 15); and (4) defendant's motion to stay the case at bar pending resolution of the motion to dismiss (D.I. 19).

## I. BACKGROUND

### 1. The parties

Frey is a Nevada resident.[8] Acrisure Holdings is a Delaware corporation.[9] Acrisure LLC is organized under the laws of Michigan and is based in Caledonia, Michigan.[10] Acrisure LLC is a wholly-owned subsidiary of Acrisure Holdings.[11] The non-party subsidiary, Assurance LTD is organized under the laws of Nevada[12] and has a headquarters in Las Vegas, Nevada.[13] Assurance LTD is wholly owned by Acrisure LLC.[14]

### 2. Jurisdiction and venue

This court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over Counts III & IV, which claim breaches of [*3] the Acrisure Holdings, Inc. Third Amended And Restated Stockholders Agreement[15] (the "Stockholders Agreement") and the Acrisure Holdings, Inc. 2013 Equity Inventive Plan, Restricted Series C Preferred Stock Award Agreement[16] (the "Preferred Stock Agreement"). The Complaint alleges that Frey and plaintiffs are citizens of different states and that the amount in controversy exceeds the jurisdictional amount.[17] This court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.[18] The court has personal jurisdiction over Frey, who is a party to these two contracts, because both contracts contain forum-selection clauses identifying Delaware courts for resolution of disputes.[19] Venue is proper based upon the forum-selection clause in the Preferred Stock Agreement.[20]

### 3. Factual background

As is discussed herein, Frey attacks subject matter jurisdiction on a factual basis. Therefore, the court does not accept plaintiffs' jurisdictional facts as true

---

[5] *Id.* at ¶¶ 44-48.

[6] *Id.* at ¶¶ 49-51.

[7] *Id.* at ¶¶ 52-56.

[8] D.I. 1 at ¶ 8.

[9] D.I. 1 at ¶ 6. The Complaint does not discuss where Acrisure Holdings has a headquarters. For the purposes of this motion, the court assumes that Acrisure Holdings is not a resident of Nevada.

[10] D.I. 1 at ¶ 7.

[11] *Id.*

[12] D.I. 1-2, ex. B at § 8 at 3.

[13] D.I. 9-1, ex. A at ¶ 7.

[14] D.I. 1-2, ex. B at § 8 at 3.

[15] D.I. 1-1, ex. A.

[16] D.I. 1-2, ex. B.

[17] 28 U.S.C. § 1332(a); D.I. 1 at ¶ 9.

[18] D.I. 1 at ¶ 9. Plaintiffs also contend that this court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 & 1367, with original jurisdiction over Count I, which arises under federal law, and supplemental jurisdiction over the remaining claims. *Id.* However, plaintiffs do not explain how, under this theory of subject-matter jurisdiction, the court has personal jurisdiction over Frey. Defendant does not dispute the factual basis for any of these jurisdictional assertions. *See generally* D.I. 9.

[19] D.I. 1 at ¶¶ 10-11.

[20] D.I. 1-2, ex. B at § 9(i).

and considers materials outside of the Complaint and the documents attached to it.[21] The key factual incongruity concerns *who* employed Frey and, thus, *who has been injured* by his alleged acts. In the Complaint, Plaintiffs allege that Frey **[*4]** was employed by "Acrisure" and alternatively "plaintiffs."[22] Frey disagrees and declares that he was employed by the non-party subsidiary, Assurance LTD.[23] Even the Preferred Stock Agreement, which plaintiffs attached to the Complaint, supports this conclusion.[24] In their answering brief in opposition to the motion to dismiss, plaintiffs conceded that Frey worked at Assurance LTD.[25]

Considering the record before the court including the Complaint, Frey's Declaration and attached materials, and the parties' briefing the following facts are relevant to the pending motions.

### (a) Frey's employment at Assurance LTD

From 2012 through 2015, Frey was employed by Assurance LTD as an insurance broker in the company's Las Vegas offices.[26] Acrisure LLC acquired Assurance LTD in December, 2015.[27] When this happened, Frey remained an employee of Assurance LTD.[28] In addition, "[a]s incentive compensation, Acrisure Holdings . . . granted Frey 22,189 shares of the Company's Series C Preferred Stock[.]"[29] The record shows that, on December 1, 2015, Frey signed two documents related to his continued employment: (1) an Employment Agreement with Assurance LTD,[30] and (2) the Acrisure Holdings Preferred Stock Agreement. **[*5]** [31] Frey remained an employee of Assurance LTD until January 2018.[32]

### (b) The Preferred Stock Agreement

According to the Complaint, when Frey signed the Preferred Stock Agreement, he "became bound by [both] the Preferred Stock Agreement and [the] Stockholders Agreement."[33] The Preferred Stock Agreement includes three relevant provisions. First, it identifies Frey's true employer as Assurance LTD, stating that the grant of shares is related to Frey's "employment by Assurance, Ltd, a Nevada corporation and a wholly-owned subsidiary of Acrisure, LLC[.]"[34]

Second, the Preferred Stock Agreement binds Frey to the Stockholders Agreement,[35] which grants confidentiality and redemption rights to Acrisure Holdings. For example, in the Stockholders Agreement "[e]ach Stockholder agrees that it will keep confidential . . . any confidential information obtained from the Company[.]"[36] In addition, when any employee owning "Management shares" terminates employment with "the Company and its subsidiaries[,]" Acrisure Holdings may redeem "all

---

[21] *See infra* Part III.A.2. & note 78.

[22] D.I. 1 at ¶¶ 8, 12, 17-18, 30, 38.

[23] D.I. 9-1, ex. A.

[24] D.I. 1-2, ex. B at § 8 at 3.

[25] D.I. 12 at 7-9.

[26] D.I. 9-1, ex. A at ¶¶ 9-11.

[27] *Id.* at ¶ 12.

[28] *See id.* at ¶¶ 12-13 (explaining that Assurance LTD required Frey to sign a new Employment Agreement in December 2015); D.I. 1 at ¶¶ 2, 16 (discussing the incentive compensation to Frey issued at the time).

[29] D.I. 1 at ¶ 2.

[30] D.I. 9-1, ex. D.

[31] D.I. 1-2, ex. B.

[32] D.I. 1 at ¶ 8.

[33] D.I. 1 at ¶ 2; *see also* D.I. 1-2, ex. B at § 5(a) ("The Company and Participant acknowledge and agree that the Shares . . . are subject to and restricted by the Stockholders Agreement.").

[34] D.I. 1-2, ex. B at § 8 at 3 ("Definitions.").

[35] *Id.* at § 5(a) ("The Company and Participant acknowledge and agree that the Shares (as Restricted Shares and as Vested Shares) are subject to and restricted by the Stockholders Agreement."); *see also* D.I. 1-1, ex. A (Stockholders Agreement).

[36] D.I. 1-1, ex. A at § 8.2.

or any portion" of those shares.[37]

Third, when Acrisure Holdings exercises its redemption rights, the Preferred Stock Agreement binds the former employee [*6] to a one-year covenant not to compete with Acrisure Holdings "or any subsidiary thereof[.]"[38]

### (c) Frey left Assurance LTD in January 2018

On January 17, 2018, Frey left Assurance LTD to start his own employee benefits firm.[39] "Within five business days" of Frey's departure, plaintiffs allege to have "received twelve broker of record changes, representing $142,000 of annual commission revenue[, which] . . . has since grown to $290,000[.]"[40] Plaintiffs contend that Frey "took a client list with him[,]"[41] as well as other "Confidential Information," and has since "falsely informed customers that he purchased his book of business from [Assurance LTD] and that [Assurance LTD] knew and permitted his soliciting of [Assurance LTD] customers."[42] Six months later, in July 2018, Acrisure Holdings "exercised its Call Option to purchase all of [Frey's] Restricted Shares[,]"[43] and placed the proceeds in escrow, pending Frey's consent to the sale.

### 4. Procedural background

Plaintiffs filed suit on September 28, 2018.[44] On November 12, 2018, Frey moved to dismiss for lack of subject matter jurisdiction.[45] Frey contends that he makes a factual attack on subject matter jurisdiction and that the court, therefore, may [*7] consider materials outside of the pleading.[46] In support of his opening brief on the motion to dismiss, Frey attached a declaration and other documentary materials.[47] In the alternative to his motion to dismiss, Frey requested jurisdictional discovery[48] as well as transfer to the United States District Court for the District of Nevada.[49]

On December 6, 2018, plaintiffs moved for a preliminary injunction.[50] Thereafter, on December 17, 2018, defendant moved to stay the case at bar pending resolution of the motion to dismiss.[51] Each of the pending motions is opposed.[52] The district court referred these motions to the court on November 15,[53] December 7,[54] and December 19, 2018.[55]

---

[37] Id. at § 5.1.

[38] D.I. 1-2, ex. B at § 7 ("[I]n connection with the sale of the Shares to the Company under the Stockholders Agreement, Participant shall not compete with the Company or any subsidiary thereof for a period of one year immediately following the date of sale and purchase of such shares.").

[39] D.I. 9-1, ex. A at ¶¶ 1, 11; D.I. 1 at ¶ 18.

[40] D.I. 1 at ¶ 19.

[41] Id. at ¶ 20.

[42] Id. at ¶ 21.

[43] D.I. 1 at ¶ 23.

[44] D.I. 1.

[45] D.I. 8; D.I. 9.

[46] D.I. 9 at 9.

[47] D.I. 9-1, exs. A-K.

[48] D.I. 9.

[49] D.I. 8. On the subject of transfer, Frey has requested, "[s]hould the [c]ourt conclude that it has subject matter jurisdiction, . . . that the [c]ourt exercise its discretionary authority under 28 U.S.C. § 1404(a) and transfer the action to the U.S. District Court for the District of Nevada in Las Vegas[.]" Id. Plaintiffs oppose the motion, citing the forum selection clauses in the Stockholders Agreement and the Preferred Stock Agreement. D.I. 12 at 10-12.

[50] D.I. 15; D.I. 16.

[51] D.I. 19; D.I. 20.

[52] D.I. 12 (opposing the motion to dismiss); D.I. 29 (opposing the motion for preliminary injunction); D.I. 27 (opposing the motion to stay). One motion in the alternative, for jurisdictional discovery, D.I. 9 at 12, is unopposed, D.I. 12 at 7-9.

[53] D.I. 11 (referring the motion to dismiss (D.I. 8), including the motions in the alternative to transfer (D.I. 8) and for jurisdictional discovery (D.I. 9)).

[54] D.I. 18 (referring the motion for preliminary injunction (D.I. 15)).

[55] D.I. 22 (referring the motion to stay (D.I. 19)).

## II. DISCUSSION

There are two primary motions before the court—a motion to dismiss and a motion for a preliminary injunction. Since subject matter jurisdiction may be dispositive of the case at bar, or at least some of the claims, the court turns first to the motion to dismiss. For the reasons that follow, the court concludes that it does not have subject-matter jurisdiction over plaintiffs' claims and, therefore, recommends that the district court grant defendant's motion to dismiss. As a result, the court recommends that the district **[*8]** court deny as moot the other pending motions.

### A. Frey's Motion to Dismiss

Frey moves to dismiss all the claims on the grounds that plaintiffs lack Article III standing to sue him and, thus, the court lacks subject-matter jurisdiction over the claims.[56] Frey argues that he "was employed by Assurance LTD" and that plaintiffs lack the particularized injury-in-fact necessary to establish Article III standing.[57] Frey maintains that plaintiffs are attempting to "pierce their own corporate veils [to] argue that the two corporate entities are, in every sense, a single, integrated enterprise and the alter ego of [Assurance LTD] . . . for all purposes."[58] In addition, Frey contends, "[t]he various agreements at issue . . . are not sufficient" to overcome this fundamental deficiency of standing.[59] In support of his motion, Frey offers additional materials and characterizes his attack on subject matter jurisdiction as "factual" and not "facial."[60]

Plaintiffs respond that Frey's challenge is facial and the "injuries [that] include a loss of more than $290,000 of annual commission revenue[]" are "traceable to [Frey.]"[61] At the same time, plaintiffs acknowledge that: (1) neither Acrisure LLC nor Acrisure Holdings **[*9]** operates an insurance brokerage, and (2) the $290,000 in allegedly lost commissions belong to the non-party subsidiary, Assurance LTD.[62] Nonetheless, according to plaintiffs, the injuries experienced by Assurance LTD translate into losses of "value" and "goodwill" for Acrisure LLC and Acrisure Holdings.[63]

Based upon these arguments, the court begins with the question of whether Frey attacks subject matter jurisdiction facially or factually.[64] With that question addressed, the court identifies the facts beyond the Complaint that are relevant to subject matter jurisdiction.[65] In light of these facts, the court then addresses each plaintiff's claims.

### 1. Standard of Review

**(a)** *Rule 12(b)(1)*

Under *Federal Rule of Civil Procedure 12(b)(1)*, the court's jurisdiction may be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts.[66]

"A facial attack . . . is an argument that considers a

---

[56] D.I. 9 at 9-11.

[57] *Id.*

[58] *Id.* at 9.

[59] *Id.* at 9-11.

[60] *Id.* at 9.

[61] D.I. 12 at 7.

[62] *Id.* at 7-9.

[63] *Id.* at 8-9.

[64] *See infra* Part III.A.2.

[65] *See infra* Part III.A.3.

[66] *Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)* ("At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."); *see also* 2 *Moore's Federal Practice § 12.30[4]* (3d ed. 1997) [hereinafter *Moore*].

Case 1:20-cv-02974-PGG   Document 33-4   Filed 06/15/20   Page 7 of 15

Page 6 of 14
2019 U.S. Dist. LEXIS 48639, *9

claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, **[*10]** or because some other jurisdictional defect is present."67 "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint."68 Where there is a facial attack on jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."69 Dismissal for a facial attack to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"70

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction."71 "[F]or example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking."72 Where there is a factual attack, the court is not "confine[d] to the allegations in the . . . complaint, but [may] consider affidavits, depositions, and **[*11]** testimony to resolve factual issues bearing on jurisdiction."73 Under that circumstance, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."74

### (b) Standing

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."75 "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."76 "The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'"77 "A motion to dismiss for want of standing is properly brought pursuant to *Rule 12(b)(1)*, because standing is a jurisdictional

---

67 *Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)*.

68 *Id.* (citing *Mortensen, 549 F.2d at 889-92*).

69 *Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)* (citations omitted).

70 *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991)* (quoting *Bell v. Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 90 L. Ed. 939 (1946))*.

71 *Constitution Party, 757 F.3d at 358*.

72 *Id.* (citing *Mortensen, 549 F.2d at 891*).

73 *Gotha v. United States, 115 F.3d 176, 179, 36 V.I. 392 (3d Cir. 1997)*; *Mortensen, 549 F.2d at 891-92*.

74 *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000)* (quoting *Mortensen, 549 F.2d at 891*). Usually, subject matter jurisdiction is decided at the outset of a case, however, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." *Moore at § 12.30[1]*. For example, "[n]ormal practice permits a party to establish jurisdiction at the outset of a case by means of a nonfrivolous assertion of jurisdictional elements, and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 537-38, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995)*.

75 *Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*.

76 *Id.* (citations omitted).

77 *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 484, 102 S. Ct. 752, 70 L. Ed.*

Case 1:20-cv-02974-PGG   Document 33-4   Filed 06/15/20   Page 8 of 15

Page 7 of 14
2019 U.S. Dist. LEXIS 48639, *11

matter."[78]

### (i) Article III standing

"[T]he irreducible constitutional minimum of standing contains three elements."[79] "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[80] "Second, there [*12] must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"[81] "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[82] "The party invoking federal jurisdiction bears the burden of establishing these elements."[83]

### 2. Frey factually attacks subject-matter jurisdiction

As a preliminary matter, the court must determine whether Frey presents a facial or a factual attack to subject matter jurisdiction.[84] The Complaint alleges that the case at bar "arises out of [Frey's] departure from employment with [p]laintiffs and his concurrent breach of contractual duties to [p]laintiffs[,]"[85] and that Frey "acquired [] Confidential Information through his employment for [p]laintiffs[.]"[86] These allegations create the impression that Frey was employed by *both* Acrisure LLC and Acrisure Holdings *at the same time*. However, the Complaint also alleges specifically that Frey "was employed as a salesperson for Acrisure [LLC] until January 2018."[87] Moreover, [*13] the Preferred Stock Agreement, which plaintiffs attached to the Complaint, states plainly that Frey was employed by *yet another entity*, the non-party subsidiary, Assurance LTD.[88]

In view of these materials, Frey argues, that "[p]laintiffs' allegations of injury are incomplete, misleading and in some cases, inaccurate."[89] He maintains that the facts underlying jurisdiction are in doubt and that additional materials are necessary to resolve the question of subject matter jurisdiction.[90] In support, Frey has submitted a signed declaration to which he has attached several supporting documents,[91] including a copy of his Employment Agreement with Assurance LTD.[92]

---

[77] 2d 700 (1982) (quoting *Flast v. Cohen, 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968))*.

[78] *In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)* (internal quotation marks and alterations omitted) (citing *Ballentine v. United States, 486 F.3d 806, 810, 48 V.I. 1059 (3d Cir.2007))*.

[79] *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)* (footnote, citations, and internal quotation marks omitted).

[80] *Id.* (citations and internal quotation marks omitted). The *Lujan* Court stated that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Id. at 560 n.1*.

[81] *Id. at 560* (quoting *Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976))*.

[82] *Id. at 561* (quoting *Simon, 426 U.S. at 43*).

[83] *Id.* (citations omitted).

[84] E. g., *Schering Plough, 678 F.3d at 243* (citing *Mortensen, 549 F.2d at 891*).

[85] D.I. 1 at ¶ 12.

[86] *Id.* at ¶¶ 30, 38. These alleged facts account for five of the six counts in the Complaint.

[87] D.I. 1 at ¶ 8; ¶¶ 17-18.

[88] D.I. 1-2, ex. B at § 8 at 3 (referring specifically to Frey's "employment by Assurance, Ltd, a Nevada corporation and a wholly-owned subsidiary of Acrisure, LLC, a subsidiary of [Acrisure Holdings.]").

[89] D.I. 9 at 9 (citing *Harrison v. Soroof Int'l, Inc., 320 F. Supp. 3d 602, 610 (D. Del. 2018))*.

[90] D.I. 9 at 9.

[91] D.I. 9-1, exs. A-K.

[92] *Id.*, ex. D.

The gravamen of Frey's factual attack on subject-matter jurisdiction is his averment that he was employed by Assurance LTD, "not Acrisure Holdings and/or Acrisure LLC[.]"[93]

Plaintiffs argue that the "motion is more properly understood as a facial attack because [Frey] contends that the Complaint lacks sufficient allegations to establish standing."[94] However, plaintiffs offer no citation, or explanation, for this position.[95] In addition, plaintiffs do not dispute the authenticity or the validity of the documents Frey introduced, nor do [*14] they seek to strike these materials from the record.[96] Plaintiffs also do not seek leave to amend the Complaint.[97] Indeed, plaintiffs maintain in their answering brief that: (1) Assurance LTD is a subsidiary of Acrisure LLC, and (2) *Frey was employed by Assurance LTD*.[98]

To be sure, there is no evidence of a facial attack on subject-matter jurisdiction. Frey does not challenge any of the jurisdictional bases identified in the Complaint.[99] Instead, Frey submitted a signed declaration and sought to introduce materials into the record challenging the factual basis for plaintiffs' standing in the case at bar.[100] The court, consequently, concludes that Frey has made a factual attack on subject matter jurisdiction.[101]

### 3. Other facts relevant to subject-matter jurisdiction

Based upon Frey's factual attack to plaintiffs' standing, the court looks beyond the pleadings and considers the related briefing, the conflicting facts in the Preferred Stock Agreement, and other relevant materials to determine its own jurisdiction to hear the case at bar.[102] By this point, it is clear that the parties agree that Frey was employed by Assurance LTD, and not "plaintiffs" [*15] or Acrisure LLC.[103] However, the lack of dispute over this fact does not end the court's factual inquiry into subject-matter jurisdiction. For instance, the record also contains inconsistent and conflicting allegations as to *whose* client list was allegedly taken and, thus, who suffers the relevant injury-in-fact necessary to establish standing.[104]

### (a) The client list belongs to the non-party subsidiary, Assurance LTD

Plaintiffs allege in the Complaint that the client list

---

[93] D.I. 9 at 9.

[94] D.I. 12 at 6.

[95] *Id.*

[96] See generally D.I. 12.

[97] *Id.*

[98] D.I. 12 at 8.

[99] D.I. 9 at 8-11 (arguing why plaintiffs do not have standing under Article III).

[100] *Id.*

[101] *Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016)* (citation omitted) ("Here, because it submitted a signed declaration disputing Davis's factual allegations, Assurant has mounted a factual challenge to subject matter jurisdiction."); *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)* ("Northwest's motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial

attack on the court's subject matter jurisdiction under *Fed. R. Civ. P. 12(b)(1).*"); *cf. Constitution Party, 757 F.3d at 358* (citing *Mortensen, 549 F.2d at 892 n.17*) (finding an attack on subject matter jurisdiction to be facial when defendant "filed the attack before it filed any answer to the Complaint *or otherwise presented competing facts.*"); *CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008)* (finding the district court to be "correct" in treating the issue under *12(b)(1)* but concluding that "[t]here are here no factual disputes that are relevant to determining subject matter jurisdiction."); *but cf. Schering Plough, 678 F.3d at 243* (The Third Circuit has reasoned that when evaluating under *Rule 12(b)(1)* "whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a *Rule 12(b)(6)* motion to dismiss for failure to state a claim[.]"); *Finkelman v. Nat'l Football League, 810 F.3d 187, 194 (3d Cir. 2016)* (applying 12(b)(6) standards to the "three elements of Article III standing.").

[102] *E. g., Mortensen, 549 F.2d at 891*.

[103] *See supra* Part II.3. (a)

[104] For example, Frey argues that plaintiffs do not have standing to sue, because they do not "hold legal title to the trade secrets and confidential information that allegedly was taken." D.I. 9 at 10.

belongs to *plaintiffs*.[105] This is a fact that Frey disputes—he contends that *Assurance LTD* is the true owner of the client list.[106] In the answering brief, Plaintiffs do not directly identify Assurance LTD as the owner of the client list but nonetheless clarify that their allegation is that Frey took a "client list of Acrisure[ LLC's] subsidiary[.]"[107] There is little doubt in the briefing that Assurance LTD is the subsidiary in question. Taken together, the record broadly supports the conclusion that the client list Frey is alleged to have taken belongs to Assurance LTD.

First, in the Employment Agreement, Assurance LTD claims ownership of the "business" with customers that Frey developed and [*16] maintained.[108] The Employment Agreement also defines "Confidential Information" to include "customer lists, [and] the needs and demands of customers[.]"[109] Frey is required to keep this information confidential, and upon termination of his employment, he is to immediately return it.[110] In addition, the Employment Agreement subjects Frey to a two-year long covenant not to solicit or interfere with Assurance LTD's customers.[111] Assurance LTD relies on the Employment Agreement to both claim ownership of the confidential information and to protect it.

Second, in light of the undisputed facts concerning Frey's employment, plaintiffs' allegations leave no doubt that Assurance LTD owns the client list. The relevant portion of plaintiffs' misappropriation claims are generally that: (1) Frey was employed as an insurance salesperson;[112] (2) Frey misappropriated a client list from his employer;[113] and (3) armed with this client list, Frey left his employment and solicited some of his former employer's clients and convinced them to do business with him in his new venture.[114] Since Frey was employed by Assurance LTD, it follows that the client list he allegedly took must be the property of Assurance LTD. Thus, [*17] the court concludes that the "Confidential Information" discussed in the Complaint, including the client list, is Assurance LTD's property.

With a better understanding of the facts before it, the court turns to the question of whether plaintiffs have sufficiently pleaded the elements of Article III standing for both Acrisure LLC and Acrisure Holdings. Broadly speaking, plaintiffs put forward two theories of injury: (a) misappropriation of confidential information, under various causes of action including trade secret statutes, breach of contract, and tort (Counts I, II, IV, V, and VI), and (b) breach of a covenant not to compete (Count III). The court addresses these two groups of claims in the above order.

### 4. Misappropriation

Plaintiffs statutory misappropriation claims, Counts I and II, hinge on Frey's alleged misappropriation of confidential information acquired "through his employment[,]"[115] which "has caused and will continue to cause injury and damages to

---

[105] *E.g.*, D.I. 1 at ¶ 50 (alleging that the "Confidential Information" is "[p]laintiffs' personal property[.]"). For the purposes of the motion to dismiss, the court uses the terms "client list" and "confidential information" interchangeably.

[106] D.I. 9 at 11; *see also id.* at 1, 6.

[107] D.I. 12 at 7; *see also* D.I. 9-1. ex. H at 2 (alleging in Acrisure Holdings' January 22, 2018 demand letter that Frey "had access to confidential and proprietary information of Assurance [LTD]" and that he "may have taken [] documents, records, information, software or other property of Assurance[.]").

[108] D.I. 9-1, ex. D at § 1 ("All business [Frey] develops and secures . . . and all business [he] services during the term of this Agreement shall be the exclusive property of [Assurance LTD].").

[109] *Id.* at § 8.

[110] *Id.* at § 9.

[111] *Id.* at § 10(a)(i)-(ii).

[112] D.I. 1 at ¶ 2.

[113] *Id.* at ¶ 3.

[114] *Id.*

[115] *Id.* at ¶¶ 30, 38.

[p]laintiffs."[116] The contractual claim, Count IV, is based on the Stockholders Agreement between Frey and Acrisure Holdings in which Frey is alleged to have breached this contract "by misappropriating the Confidential Information [*18] to the detriment of [p]laintiffs."[117] Plaintiffs' conversion claim, Count V, is based on the premise that Frey allegedly "wrongfully assumed dominion and control over [p]laintiffs' personal property" (the client list), leading to injury and damages.[118] Finally, in their tortious interference with prospective economic advantage claim, Count VI, plaintiffs allege that "[d]efendant improperly used the Confidential Information" to compete with plaintiffs, which caused them "actual damages, including lost profits[.]"[119]

Frey challenged the factual basis for these claims, namely that he was employed by a third party, Assurance LTD, and that the only injury alleged "is a financial injury suffered by . . . Assurance LTD."[120] Plaintiffs responded by addressing *only the contractual* causes of action[121] —plaintiffs did not discuss any alleged injuries-in-fact related to Counts I, II, V, and VI.[122]

### (a) Counts I, II, V, and VI

By failing to rebut Frey's factual challenge to plaintiffs' standing as to the causes of action discussed in Counts I, II, V, and VI of the Complaint, plaintiffs have not carried their burden to prove the existence of subject matter jurisdiction as to these claims. [*19] [123] However, for completeness the court includes the following analysis.

As to Counts I, II, V, and VI, it is not clear what injury, if any, either plaintiff has suffered as a result of the alleged misappropriation of the "Confidential Information," including the client list. In the "Acrisure" corporate structure, Acrisure Holdings is the corporate parent, and Acrisure LLC is "a wholly-owned subsidiary" of it.[124] Plaintiffs state that Acrisure LLC is not in the business of selling insurance[125] and that it operates through subsidiaries, such as Assurance LTD.[126]

Of course, the facts in the record demonstrate that Assurance LTD has allegedly suffered an injury, in the form of lost revenues, from the alleged misappropriation.[127] Frey maintains that an injury to Assurance LTD is not legally the same as an injury to its corporate parents.[128] As a result, Frey

---

[116] *Id.* at ¶¶ 31, 38.

[117] *Id.* at ¶ 47.

[118] *Id.* at ¶¶ 50-51.

[119] *Id.* at ¶¶ 53-56.

[120] D.I. 9 at 10.

[121] D.I. 12 at 7 ("Plaintiffs demonstrated that they suffered an 'injury in fact'. . . . as a result of [d]efendant's violations of the Preferred Stock Agreement and Stockholders Agreement, [and that p]laintiffs suffered injuries[, which] . . . include a loss of more than $290,000 of annual commission revenue[.]"); *id*. at 8 ("Plaintiffs seek relief based on Defendant's clear violations of the Preferred Stock Agreement and the Stockholders Agreement.").

[122] As discussed above, plaintiffs take the position that Frey makes a facial attack on subject matter jurisdiction. *See supra* Part III.A.2. & notes 94-95. Thus, plaintiffs contend that they have demonstrated subject matter jurisdiction under the more favorable *Rule 12(b)(6)* standards. *E. g.*, D.I. 12 at 8 ("Taken in the light most favorable to [p]laintiffs[.]").

[123] *Mortensen, 549 F.2d at 891* ("[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist."); *see also Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)*.

[124] D.I. 1 at ¶ 7.

[125] D.I 12 at 7-9.

[126] *Id.* at 8.

[127] *E. g.* D.I. 12 at 7 (citing D.I. 1 at ¶ 19) ("Plaintiffs alleged that as a result of [d]efendant's violations of the Preferred Stock Agreement and Stockholders Agreement, [p]laintiffs suffered injuries personal to [p]laintiffs. These injuries include a loss of more than $290,000 of annual commission revenue, which is certain to increase given that Frey likely took a client list of Acrisure's subsidiary with him when he left Acrisure's employment.").

[128] D.I. 9 at 10-11. For example, Frey argues that "[a]ll of Acrisure's claims depend on proof that it, independently and individually, possesses title to the trade secrets and other unidentified confidential

Case 1:20-cv-02974-PGG   Document 33-4   Filed 06/15/20   Page 12 of 15

Page 11 of 14
2019 U.S. Dist. LEXIS 48639, *19

contends, both plaintiffs lack standing, because they have failed to plead an injury-in-fact.[129] Plaintiffs aver in response that "Acrisure's revenue and value as a company is reliant on the health and success of its subsidiaries. . . . its value is contingent on being able to protect the confidential information and goodwill it is buying."[130] Although [*20] plaintiffs characterize "Acrisure" as a single corporate entity, the court must look for an injury-in-fact as to each plaintiff.

Starting with Acrisure LLC, plaintiffs argue that Acrisure LLC will likely see a loss in revenues or "value" associated with the allegedly lost revenues at Assurance LTD.[131] However, the "legally protected interest"[132] in the lost revenues associated with the client list belongs to Assurance LTD and does not translate into a distinct interest for its corporate parent, Acrisure LLC.[133] "Wrongdoing to a subsidiary does not confer standing upon the parent company, even where the parent is the sole shareholder of the subsidiary."[134]

The claim by Acrisure LLC's corporate parent, Acrisure Holdings, is even more remote. For the same reasons discussed above, Acrisure Holdings' claims of injury are far too indistinct and nonparticular to establish standing.[135] Taken together, the court concludes that Acrisure LLC and Acrisure Holdings do not have standing to sue for the alleged misappropriation of Assurance LTD's confidential information. Thus, the court [*21] does not have subject matter jurisdiction over Counts I, II, V, and VI as they relate to both plaintiffs.

**(b) Count IV—breach of confidentiality provisions of the Stockholders Agreement**

Turning to Count IV, plaintiffs' claim for breach of the Acrisure Holdings Stockholders Agreement, this contract states that "[e]ach Stockholder agrees that it will keep confidential and will not disclose, divulge or use for any purpose, other than to monitor its investment in [Acrisure Holdings] and its subsidiaries, any confidential information obtained from [Acrisure Holdings.]"[136] Plaintiffs allege that Frey breached this contract and that this "has caused and will continue to cause injury and damages to [p]laintiffs."[137]

---

information that is the basis for Counts I, II, IV, V, and VI." *Id.* at 10 (emphasis and citation omitted).

[129] *Id.*

[130] D.I. 12 at 8.

[131] *Id.*

[132] *Lujan, 504 U.S. at 560* ("[T]he plaintiff must have suffered . . . an invasion of a legally protected interest[.]").

[133] *See, e. g., Warth, 422 U.S. at 499* (citations omitted) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

[134] *Tullett Prebon, PLC v. BGC Partners, Inc., No. CIV.A.09-5365 (SRC), 2010 U.S. Dist. LEXIS 60783, 2010 WL 2545178, at *4 (D.N.J. June 18, 2010)* (citations om itted), *aff'd*, *427 Fed. Appx. 236 (3d Cir.2011)*. *See also Aetna U. S. Healthcare, Inc. v. Columbia Cas. Co., No. CIV. A. 99-596, 1999 U.S. Dist. LEXIS 11435, 1999 WL 554606, at *3 (E.D. Pa. July 20, 1999)* (finding a corporate parent to not have standing to sue on behalf of its subsidiary); *CRC Health Grp., Inc. v. Town of Warren, No. 2:11-CV-196-DBH, 2014 U.S. Dist. LEXIS 76239, 2014 WL 2444435, at *31 (D. Me. Apr. 1, 2014)* ("The facts that are properly in evidence for purposes of summary judgment point to one conclusion: that [the corporate parent] suffered no injury distinct from that suffered by [its subsidiary]."); *see cf. Hologic, Inc. v. Minerva Surgical, Inc., 163 F. Supp. 3d 118, 121 (D. Del. 2016)* (emphasis and internal quotation marks omitted) (citing *Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1579 (Fed.Cir.1991))* ("The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of infringement."); *Site Microsurgical Sys., Inc. v. Cooper Companies, Inc., 797 F. Supp. 333, 338-39 (D. Del. 1992)* ("The Court declines to find a mere parent-subsidiary relationship or a mere anticipation of a sale to be sufficient to confer standing to sue for alleged patent infringement.").

[135] *See supra* note 135.

[136] D.I. 1-1, ex. A at § 8.2 at 20 ("Confidentiality"). Defendant challenges this and declares that he did not receive any confidential information from Acrisure Holdings, D.I. 9-1, ex. A at ¶¶ 17-19, but this addresses the merits of the misappropriation claims and not the question of standing.

[137] D.I. 1 at ¶ 48.

Frey argues that plaintiffs cannot be a victim of breach of contract if they do "not hold legal title to the trade secrets and confidential information that allegedly was taken[,]" absent which plaintiffs lack standing.[138] By extension, Frey explains, the injury attributed to the breach of contract claim is, therefore, the legal right of a third party.[139] Plaintiffs maintain that there is a connection between the alleged harm (Assurance LTD's lost revenues) and an injury to plaintiffs, [*22] namely that plaintiffs lost "value" and "goodwill" when Frey allegedly took a client list and opened a competing insurance agency.[140]

### (i) Acrisure LLC

First of all, Acrisure LLC is not a party to either the Stockholders Agreement[141] or the Preferred Stock Agreement.[142] As a non party, Acrisure LLC cannot allege an injury-in-fact arising from a breach of either of these contracts. Indeed, the relevant portions of the Complaint do not include any factual allegations related to Acrisure LLC.[143] Thus, the court concludes that Acrisure LLC does not have standing to sue for breach of contract and that, therefore, the court does not have subject matter jurisdiction over Acrisure LLC's Count IV.

### (ii) Acrisure Holdings

Unlike the other misappropriation claims,[144] in which plaintiffs allege a vague injury arising out of Assurance LTD's rights,[145] Acrisure Holdings is a party to both contracts and can assert a "legally protected interest"[146] in enforcing those contracts. For example, Acrisure Holdings alleges a violation of its interests based upon Frey's alleged breach of the confidentiality provisions of the Stockholders Agreement.[147]

However, like the other misappropriation claims, the alleged injury is remote [*23] and not particular to Acrisure Holdings. Regardless of whether the alleged injuries to Assurance LTD are characterized as lost revenues,[148] lost goodwill,[149] or lost value,[150] any injury to its corporate grandparent, Acrisure Holdings, is directly linked to those injuries. Plaintiffs have not alleged an injury to Acrisure Holdings that is distinct from Assurance LTD's injuries. Thus, based upon the confidentiality provision in the Stockholders Agreement, the alleged injuries to Assurance LTD do not add up to a particularized injury-in-fact for Acrisure Holdings.[151]

For these reasons, the court concludes that Acrisure Holdings does not have standing to sue, under breach of contract, for the alleged misappropriation of Assurance LTD's confidential information. Therefore, the court does not have subject matter jurisdiction over Acrisure Holdings' Count IV.

---

[138] D.I. 9 at 10-11 (citing *In re Majestic Star Casino, LLC, 716 F.3d 736, 748 (3d Cir. 2013)*).

[139] D.I. 9 at 10-11.

[140] D.I. 12 at 8-9.

[141] D.I. 1-1, ex. A.

[142] D.I. 1-2, ex. B.

[143] D.I. 1 at ¶¶ 39-48.

[144] As discussed above, in these misappropriation claims, plaintiffs are asserting the legal right of what the facts show to be Assurance LTD and not a legal right of either plaintiff. *See supra* Part III.A.4.(a).

[145] In the trade secret misappropriation and tort claims (Counts I, II, V, and VI) the alleged injury is based on an intrusion into Assurance LTD's legally-protected interest.

[146] *Lujan, 504 U.S. at 560* ("[T]he plaintiff must have suffered . . . an invasion of a legally protected interest[.]").

[147] D.I. 1 at ¶¶ 44-48; D.I. 1-1, ex. A at § 8.2.

[148] D.I. 1 at ¶ 19.

[149] D.I. 12 at 8-9. Plaintiffs do not plead lost goodwill in the Complaint.

[150] *Id.* Plaintiffs do not plead lost value in the Complaint.

[151] *Warth, 422 U.S. at 499* (citations omitted) ("A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action[.]'").

### 5. Covenant not to compete—Count III

Frey and Acrisure Holdings are parties to the Preferred Stock Agreement, which includes the following provision:

> 7. <u>Covenant</u>. Participant acknowledges and agrees that in connection with the sale of the Shares to the Company under the Stockholders Agreement, *Participant shall not compete with the Company or any [*24] subsidiary thereof* for a period of one year immediately following the date of sale and purchase of such shares. . . .[152]

Plaintiffs allege that "the Company"[153] exercised the "Call Option" under the Stockholders Agreement to purchase Frey's stock on July 18, 2018 and that, thereafter, Frey has been in breach of this provision of the Preferred Stock Agreement by operating an insurance agency that competes with Assurance LTD.[154] Plaintiffs allege that this breach "has caused and will continue to cause injury and damages to [p]laintiffs."[155] The court addresses the covenant not to compete as to each plaintiff.

### (a) Acrisure LLC

As discussed above with respect to Count IV, Acrisure LLC is not a party to the Preferred Stock Agreement. Therefore, Acrisure LLC does not have standing to sue for breach of contract, and the court does not have subject matter jurisdiction over Acrisure LLC's Count III.

### (b) Acrisure Holdings

Frey contends that Acrisure Holdings is "the only entity that could theoretically have a claim" for the alleged violation of the non-competition provision.[156] However, he argues, the alleged injury to Assurance LTD is insufficient for the corporate grandparent's Article III standing, because [*25] "[p]arties cannot create constitutional standing through contract."[157] Plaintiffs contend that "Acrisure Holdings . . . may [] sue on its own behalf to recover damages caused by [Frey's] breach of his covenant not to compete against a subsidiary of Acrisure [LLC], and to enjoin further competition against . . . [Assurance LTD]."[158] In the case at bar, plaintiffs essentially argue that, by agreeing to the covenant not to compete, Frey has consented to the court's subject matter jurisdiction over a variety of claims involving injuries by various subsidiaries that are not parties to the contract.[159] Frey replies by calling this argument "a transparent attempt to establish standing artificially[.]"[160]

Plaintiffs are correct that Acrisure Holdings may sue to recover damages for breach of the covenant not to compete, but, as with the other claims, plaintiffs have not alleged that Acrisure Holdings has suffered an injury-in-fact.[161] Moreover, Acrisure Holdings cannot rely on a contract to claim Assurance LTD's injuries as its own—"It is well-settled that an admission or consent to

---

[152] D.I. 1-2, ex. B at ¶ 7 at 3 (emphasis added).

[153] Presumably, this is Acrisure Holdings.

[154] D.I. 1 at ¶¶ 22-25.

[155] *Id.* at ¶ 43.

[156] D.I. 9 at 11.

[157] D.I. 9 at 11 & n.4 (citing *Lujan, 504 U.S. at 560-61*); *see also* D.I. 13 at 4 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982))* ("Just as parent companies cannot bootstrap themselves into federal court by riding their subsidiaries' coat tails, parties cannot establish federal subject matter jurisdiction by contract, consent or waiver.").

[158] D.I. 12 at 8. Plaintiffs make this assertion indirectly, by averring that it is Frey's burden to disprove these facts. *Id.* at 8. In fact it is plaintiffs' burden to prove that subject matter jurisdiction exists. *E. g., supra* note 83. For reference, Plaintiffs refer to Acrisure Holdings, Inc. as "Acrisure Holdings" and Acrisure LLC as "Acrisure." D.I. 12 at 1.

[159] D.I. 12 at 8.

[160] D.I. 13 at 4.

[161] D.I. 12 at 7-9.

jurisdiction is insufficient to vest a federal court with proper subject matter jurisdiction over a plaintiff's **[*26]** claims."[162] Therefore, the court concludes that it does not have subject matter jurisdiction over Acrisure Holdings' Count III.

### 6. Conclusion

For the above reasons, the court recommends that the district court grant the motion to dismiss Counts I-VI as to both plaintiffs.[163]

### B. Other Motions

In light of the above recommendation, Frey's motion to stay as well as his motions in the alternative for jurisdictional discovery and to transfer are moot. Since the court has concluded that it lacks subject-matter jurisdiction over plaintiffs' claims, plaintiffs' motion for a preliminary injunction is also moot.

### III. CONCLUSION

For the aforementioned reasons, court recommends that the district court GRANT Frey's motion to dismiss (D.I. 8). With respect to Frey's motions to transfer (D.I. 8), for jurisdictional discovery (D.I. 8), and to stay (D.I. 19), the court recommends that the district court DENY these motions as moot. For the same reasons, the court recommends that the district court DENY as moot plaintiffs' motion for a preliminary injunction (D.I. 15).

Pursuant to *28 U.S.C. § 636(b)(1)(B)*, *Fed. R. Civ. P. 72 (b)(1)*, and *D. Del. LR 72.1*, any objections to the Report & Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being **[*27]** served with the same. Any response shall be limited to ten (10) pages and filed within fourteen days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under *Fed. R. Civ. P. 72* dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov).

Dated: March 25, 2019

/s/ Mary Pat Thynge

Chief U.S. Magistrate Judge

---

**End of Document**

---

[162] *Bd. of Educ. of Appoquinimink Sch. Dist. v. Johnson, 543 F. Supp. 2d 351, 354 (D. Del. 2008)* (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. at 702*).

[163] D.I. 8.