**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Jonathan Stoler
212.634.3043 direct
jstoler@sheppardmullin.com

November 23, 2020

**VIA ECF**

Hon. Sarah L. Cave
U.S. Magistrate Judge
U.S. District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Precision Medicine Group, LLC, et al. v. Blue Matter, LLC, et al.*, Case No. 1:20-cv-02974

Dear Magistrate Judge Cave:

This firm represents the plaintiffs, Precision Medicine Group, LLC, PRECISIONadvisors Group, Inc., and Precision Medicine Group Holdings, Inc. (collectively, "Precision" or the "Company") in the above-referenced matter.  We write pursuant to Your Honor's November 13, 2020 order to set forth all outstanding discovery issues between Precision and Blue Matter, LLC ("Blue Matter").  As detailed below, Precision and Blue Matter have been unable to reach an agreement regarding: (1) the search terms Blue Matter will use in searching for and producing electronically stored information ("ESI") responsive to Precision's document requests; (2) whether Blue Matter will search for and produce ESI from the personal email accounts of its founder and managing partner, Ashwin Dandekar; and (3) the definition of "Market Access" used by Precision in its discovery requests.  Accordingly, Precision and Blue Matter respectfully submit these issues for Your Honor's consideration.[1]

**I.       Precision's Position**

      **A.       Blue Matter's ESI Search Terms**

Nearly five months ago, on July 2, 2020, Precision served document requests on Blue Matter along with proposed ESI search terms.  On a July 21st phone call regarding those terms, Blue Matter stated that it believed Precision's proposed search terms would likely return an unduly burdensome number of hits and asked Precision to provide revised terms.  Precision requested that Blue Matter first run its proposed search terms and provide hit counts so that Precision could assess whether and how to revise its proposed search terms, which  Blue Matter agreed to do.

---

[1] Precision and Blue Matter are aware of Rules I.A and II.C.2 of Your Honor's Individual Rules of Practice requiring that certain letters and letter motions not exceed three pages in length.  In light of Your Honor's order directing the parties to make one joint submission concerning all outstanding discovery issues, Precision and Blue Matter are unsure as to whether this submission is subject to those rules.  Accordingly, while the parties have endeavored to keep this submission as succinct as possible, it does exceed three pages.

Over three months later, on October 23rd, Blue Matter finally provided those hit counts to Precision.[2]

On October 29th, the parties met and conferred regarding Precision's proposed search terms once again. At that time, Blue Matter represented that Precision's search terms yielded over 40,000 hits (60,000+ inclusive of document families), which Blue Matter considered unduly burdensome. Accordingly, on November 3rd, Precision sent Blue Matter revised search which contained numerical connectors designed to substantially limit the number of hits returned by its search terms. On November 9th, the parties met and conferred regarding Precision's revised search terms, at which time Blue Matter advised Precision that its revised search terms yielded 30,832 documents with hits (55,000+ inclusive of families). Later that day, Blue Matter provided alternative proposed search terms to Precision.

On November 12th, Precision responded to Blue Matter's alternative proposed search terms and advised Blue Matter that they were deficient in numerous respects. Among other things, Precision explained that Blue Matter's alternative proposed search terms completely omitted terms proposed by Precision that were needed to capture documents responsive to key issues in this case, such as the terms "noncompet*, nonsolicit*, "non-disclosure," covenant*, compet*, and (employment AND obligation*)" connected to the names of defendants Naina Ahmad, Jose Jauregui, or Mridul Malhotra (the "Individual Defendants").[3] Likewise, Precision explained that Blue Matter's proposed search terms improperly excluded all communications between the Individual Defendants and any Blue Matter employee other than Dandekar unless a client name was mentioned in the communication. In light of the numerous deficiencies in Blue Matter's proposed search terms, Precision requested that Blue Matter either proceed with the revised terms Precision provided on November 3rd or propose further limitations (*i.e.*, tighter numerical connectors) to those terms. On November 15th, Precision followed up and once again requested that Blue Matter either work with or propose further limitations to Precision's revised search terms.

On November 18th, Blue Matter responded with hit counts on Precision's revised proposed search terms, again proposed deleting certain key terms, and proposed substantial limitations on all other numerical connectors proposed by Precision. On November 19th, Precision responded, explaining that it could not accept Blue Matter's deletion of certain key terms, such as "market" within 25 words of "access" or other related words. However, Precision once again attempted to

---

[2] On August 25th, over a month after the parties' initial discovery call, Blue Matter advised Precision that its proposed search terms had returned "tens of thousands of hits." However, even then, Blue Matter did not provide any specific hit counts for any particular search terms. In addition, Blue Matter stated that it was working with a set of alternate search terms which, Blue Matter represented, it would send to Precision that week. Precision immediately requested to discuss any proposed revisions to its search terms before Blue Matter proceeded with the alternate terms it had unilaterally developed. However, Blue Matter did not respond to that request until over a month later, on October 4th, after repeated prompting by Precision. On October 9th the parties met and conferred by phone again regarding Precision's proposed search terms. At that time, Blue Matter again agreed to provide Precision with hit counts on those terms by early the following week. However, as noted above, those hit counts were not provided until October 23rd.

[3] While Malhotra has been dismissed as a defendant in this case, Precision has kept his name as a search term because the Company alleges that Ahmad, Jauregui, and Malhotra all conspired together with Blue Matter to breach their obligations to Precision.

**SheppardMullin**

Hon. Sarah L. Cave
November 23, 2020
Page 3

compromise, accepting Blue Matter's tighter numerical connectors on nearly all terms yielding substantial hits (within 5 words of each other instead of 25) and proposing new, more restrictive connectors on other search terms. On November 20th, Blue Matter rejected Precision's proposed compromise (representing that Precision's further revised search terms yielded 47,000 documents, including families) and the parties agreed, having reached an impasse, to submit this dispute to Your Honor. Attached hereto as Exhibit A is the final compromise proposal Precision sent to Blue Matter on November 19, 2020.[4]

As detailed above, Precision has been hamstrung by Blue Matter's excessive delays in responding to Precision's proposed search terms and Blue Matter's proposal of unreasonable alternative search terms in response. Each time Blue Matter has complained that Precision's proposed search terms yielded an unduly burdensome number of hits, Precision has promptly responded with substantial revisions to those terms, only to be met with unreasonable delays and counterproposals from Blue Matter, such as the deletion of the terms "noncompet*," "nonsolicit*," and "non-disclosure," in a case alleging the breach of non-compete, non-solicit, and non-disclosure obligations.[5]

Moreover, while Blue Matter has complained about the number of hits generated by Precision's search terms, the overwhelming majority of those hits are the result of Blue Matter taking absurd positions in this case. Specifically, most of the hits at issue come from search strings aimed at capturing documents related to Blue Matter's provision of market access consulting services; these search strings are necessary because Blue Matter has incredibly claimed that it does not provide market access consulting services notwithstanding its express representation to the public that it "helps clients optimize their access and reimbursement strategies in the light of numerous trends affecting the market," and similar statements on its website. (*See* Amended Complaint, ¶¶ 61-70). In light of Blue Matter's denial that it provides services competitive with Precision's – however unbelievable that claim might be – Precision is entitled to discover documents sufficient to establish that, as Blue Matter emphasizes quite clearly on its website, it does in fact provide market access consulting services.[6]

Further, the number of documents returned by Precision's second revised set of search terms, which Blue Matter has represented as 47,000+ inclusive of families, is not at all unreasonable in

---

[4] The attached spreadsheet contains the hit counts on Precision's November 3rd revised search terms on the left, side-by-side with the hit counts on those terms with all numerical connectors reduced to 5 on the right (which were separately provided to Precision by Blue Matter). As indicated in Precision's cover email to Blue Matter, Precision highlighted in green those rows where it would accept Blue Matter's proposal to reduce the numerical connectors to 5, in orange those rows where it would not, and in yellow those rows where it was proposing additional limitations to further narrow the search results.

[5] Blue Matter's reliance on *Greater New York Taxi Assoc.*, 2017 WL 4012051, *8 (S.D.N.Y. Sept. 11, 2017) for the proposition that Precision should have obtained an expert to opine on its search terms is misplaced, as it completely ignores Blue Matter's months-long delays in providing any substantive feedback whatsoever on those terms. The suggestion that Precision could or should have obtained an expert on this issue – when it was not even until November 20th that Blue Matter rejected Precision's second set of revised proposed search terms – is baseless.

[6] The number of hits generated by these market access-related search terms themselves suggest the implausibility of Blue Matter's claim that it does not engage in market access consulting work.

**SheppardMullin**

Hon. Sarah L. Cave
November 23, 2020
Page 4

light of the issues in this non-compete/trade secrets case and the ability to review documents efficiently and effectively using technology assisted review ("TAR") tools, which are widely accepted in this District and elsewhere. *See, e.g.*, *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 (S.D.N.Y. 2015) (collecting cases and noting that "the case law has developed to the point that it is now black letter law that where the producing party wants to utilize TAR for document review, courts will permit it.").[7]

Finally, as explained above, instead of proposing actual revisions to the market access-related search terms it deems excessive, Blue Matter has simply proposed deleting those terms altogether and impeding Precision's discovery of this information. Accordingly, given this unreasonable approach to discovery, Precision requests that Blue Matter be ordered to proceed with the compromise search terms proposed by Precision on November 19th.

### B. Ashwin Dandekar's Personal Email Accounts

As set forth in the Amended Complaint, Precision alleges that Ashwin Dandekar, the founder and managing partner of Blue Matter, has had a longstanding personal relationship with the Individual Defendants and that he advised Ahmad and Jauregui in connection with Precision's acquisition of their former employer, Insight Strategy Advisors ("ISA"), and Ahmad and Jauregui's agreement to post-employment restrictive covenants in connection with the same. (*See* Amended Complaint, ¶ 39). Precision further alleges that Dandekar solicited the Individual Defendants to leave Precision and join Blue Matter in violation of their restrictive covenant obligations to the Company. (*See id.*, ¶ 71). In light of his central role in this case, Precision has requested that Blue Matter search Dandekar's personal email accounts for responsive documents, which Blue Matter has refused to do. Case law in the Southern District of New York is clear that a party is required to search for and produce responsive documents – including ESI – in the personal possession of its officers, directors, and employees, where, as here, it has the "practical ability" to do so. *See, e.g.*, *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 5408171, at *1 (S.D.N.Y. Sept. 27, 2016) (requiring plaintiff corporation to search for and produce for emails sent or received by members of its board of directors from their personal email accounts); *see also Alter v. Rocky Point Sch. Dist.*, No. 13-1100 JS AKT, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) ("Defendants claim that they were not obliged to preserve work-related ESI which employees such as Defendant Superintendent Ring utilized on their personal computers. However, to the extent that the School District employees had documents related to this matter, the information should have been preserved on whatever devices contained the information (e.g. laptops, cellphones, and any personal digital devices capable of ESI storage)).

Here, as Dandekar is Blue Matter's founder and managing partner, Blue Matter unquestionably has the practical ability to obtain his emails. Moreover, as noted above, there is ample reason to believe that Dandekar has communicated with the Individual Defendants using his personal email address regarding issues that are highly relevant to this case. Specifically, Precision has alleged that, as a friend and mentor to Ahmad and Jauregui, Dandekar advised them in connection with their agreements to be bound by non-compete obligations to Precision. As a result, it is reasonable to assume, particularly in a case involving tortious interference claims, that Dandekar would have surreptitiously used a personal email account(s), at a minimum, for those communications. Precision's argument is further bolstered by the fact that the Individual

---

[7] Indeed, even Precision's initial proposed search terms were reasonable, but Precision twice proposed revised search terms in a good-faith effort to compromise.

**Sheppard**Mullin

Hon. Sarah L. Cave
November 23, 2020
Page 5

Defendants and Dandekar have already admitted that they communicated with each other over channels other than his Blue Matter email address, such as by text messages.[8]

As Precision has proposed a small set of narrowly tailored search terms to be used in searching Dandekar's personal email accounts for responsive documents – specifically, the names and email addresses of the Individual Defendants, Precision's and ISA's corporate names, and the names of Harry Schiavi (ISA's founder)[9] and Kelly Scull (a former Precision and now current Blue Matter employee) – there is no basis for Blue Matter to refuse to search Dandekar's personal email accounts.  Lastly, Precision is not required to take Blue Matter's self-serving and unsupported statement that Dandekar did not communicate with the Individual Defendants via personal email at face value.  This is especially true in cases such as the instant matter where individuals commonly use their personal email to communicate with one another in an effort to hide their unlawful conduct from detection.  Indeed, if Dandekar truly did not use his personal email account to communicate with the Individual Defendants, then a search of his personal email using the search terms Precision has proposed would yield zero hits and all parties would have certainty in knowing that no relevant documents exist in Dandekar's personal email accounts.  Accordingly, Precision requests that Blue Matter be ordered to search all of Dandekar's personal email accounts for responsive documents using the search terms provided by Precision on November 15th, as set forth in the attached Exhibit B.

### C.      Precision's Definition of "Market Access" In Its Discovery Requests

In its discovery requests to Blue Matter, Precision defined various terms for purposes of Blue Matter collecting and producing responsive documents, including the term "Market Access."  Blue Matter has objected to producing documents responsive to Precision's definition of Market Access and has proposed its own, more limited definition, eliminating certain key terms from Precision's definition (*See* the redline attached hereto as Ex. C).

Blue Matter's assertion that certain activities included in Precision's definition of Market Access do not fall within the general scope of "market access" in the industry is irrelevant and based upon nothing more than semantics. What is relevant is what Precision has alleged with respect to the services that Precision and Blue Matter both offer – those described in Precision's definition of Market Access.  Accordingly, Precision is entitled to discover evidence regarding Blue Matter's provision of those services – whatever Blue Matter might call them – in order to prove that Blue Matter is a competitor.   Blue Matter is free to argue that Precision and Blue Matter are not

---

[8] Blue Matter's claim below that there is not a "single piece of evidence showing that Mr. Dandekar used his personal email address for Blue Matter business" is both self-serving and circular.  The only entities who would have such communications are the Individual Defendants and Dandekar/Blue Matter.  Yet, to date, neither the Individual Defendants nor Dandekar/Blue Matter have produced a single communication between them (other than their formal Blue Matter offer letters).  In light of Blue Matter's and the Individual Defendants' discovery deficiencies to date, it is nonsensical, then, for Blue Matter to expect Precision to have proof of such email communications.

[9] In light of the obligation to produce responsive ESI in the personal possession of employees, Precision has agreed to the Individual Defendants' request to search Harry Schiavi's personal email accounts and cell phone for responsive documents and has provided the Individual Defendants with hit counts of the same.

**SheppardMullin**

Hon. Sarah L. Cave
November 23, 2020
Page 6

competitors because they do not actually provide the same services, but Blue Matter cannot limit discovery concerning those services by objecting to Precision's definition of its own defined term. Accordingly, Precision requests that Blue Matter be required to use Precision's definition of Market Access in searching for and producing documents responsive to Precision's discovery requests.

## II.    Blue Matter's Position

### A.    Blue Matter's ESI Search Terms

During our Conference Call on November 13, 2020, Your Honor strongly urged the parties to meet in good faith and work together to resolve the remaining issues relating to the electronic discovery. Blue Matter did just that. In an effort to move discovery, Blue Matter agreed: (1) to add five additional custodians (for a total of nine custodians); and (2) to search and produce Ashwin Dandekar's limited text messages with the Individual Defendants. Precision, however, refused to make any concessions.

Specifically, Precision continues to insist on unreasonable search terms (227 terms in total) that produced over 47,000 hits (including families). We refer the Court to the report attached as Exhibit D. Assuming a review of 100 documents per hour, it would take over 470 hours to search and produce these documents, which is both unduly burdensome and costly and greatly exceeds the proportional needs of this case. Minor revisions to these proposed search terms, in particularly eliminating 12 terms, drastically reduces the hit count to 17,714, which is much more reasonable. We refer the Court to the report attached as Exhibit E. These 12 terms are not aimed at the heart of this matter, but rather are aimed at obtaining documents relating to Blue Matter's general business activities which is irrelevant.  These terms are attached as Exhibit F.  Moreover, many of the generic terms Precision insists on using are still included on Blue Matter's list, but are connected to the individual defendants' names (e.g., (Ahmad OR Jauregui OR Malhotra) AND personnel).

Instead of explaining to the Court why these 12 terms are relevant, Precision does nothing more than attempt to cast blame on Blue Matter's alleged delay in negotiating reasonable search terms. Precision overlooks the fact that it could have brought this issue to the Court's attention sooner, but chose not to. In any event, complaining about delay simply detracts from the issue at hand; namely Precision's lack of any meaningful basis to require a review of over 47,000 documents.

Precision relies on nothing more than its own speculation (indeed, no expert opinion has been provided) that these search terms will produce relevant documents. *See Greater New York Taxi Assoc.*, 2017 WL 4012051, *8 (S.D.N.Y. Sept. 11, 2017). Precision fails to meet its Rule 26(b)(1) obligation and demonstrate how the requested electronic discovery is relevant to either its claims or Blue Matter's defense and is proportional to the needs to of this case. Precision has absolutely no evidence that Blue Matter is in possession of alleged confidential information and data (as alleged in the Amended Complaint). Yet, Precision seeks to have Blue Matter engage in costly and time-consuming electronic discovery that amounts nothing more than a fishing expedition. As stated above, the 12 search terms at issue are not designed to obtain discovery relating to Blue Matter's hiring of the Individual Defendants or even its alleged possession of Precision's data, but rather Blue Matter's general business activities.

### B.    Ashwin Dandekar's Personal Email Accounts

**SheppardMullin**

Hon. Sarah L. Cave
November 23, 2020
Page 7

Blue Matter respectfully requests that the Court deny Precision's request to conduct electronic discovery with regards to Ashwin Dandekar's personal email account. Mr. Dandekar did not use his personal email accounts for Blue Matter business, and there is absolutely no evidence to the contrary. *See CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591 (E.D.N.Y. Sept. 8, 2014) (allowing electronic discovery of corporate officers' personal email accounts because there was evidence that they used their personal email accounts for business purposes – namely, they admittedly transferred business emails and documents between their business and personal email accounts).

Despite Precision assertion "there is ample reason to believe" that Mr. Dandekar used his personal email account for Blue Matter business, one critical factor is notably absent from Precision's request – evidence! Precision has not produced a single piece of evidence showing that Mr. Dandekar used his personal email address for Blue Matter business. Indeed, Mr. Dandekar denies doing so, and the Individual Defendants never stated that they communicated with him on his personal email account. Precision relies on representations that Mr. Dandekar and the Individual Defendants exchanged text messages. However, Blue Matter agreed to produce those text messages – a fact that Precision fails to advise the Court. The fact that Mr. Dandekar and the Individual Defendants exchanged text messages is not evidence that Mr. Dandekar used his personal email account, and it is illogical to assume that he did. This request is based solely on Precision's speculation and, as such, does not justify the time and cost associated with conducting electronic discovery on Mr. Dandekar's personal email account. If discovery reveals that his personal email account was used for Blue Matter business, Plaintiff can renew its request. Given the lack of any evidence, this is request is nothing more than an improper fishing expedition, which should be denied.

This impermissible fishing expedition is aimed at harassing Mr. Dadekar, who is *not* an individual defendant in this matter. *See Sutherland v. Suffolk County*, 2016 WL 3264169 (E.D.N.Y. June 14, 2016) (allowing electronic discovery of personal email accounts because they were sued in their individual capacities).

Finally, Plaintiffs' reliance on *Royal Park Investments v. Deutsche Bank National Trust Co.*, 2016 WL 5408171 (S.D.N.Y. Sept. 27, 2016) is completely misplaced. Critical to the Court's ruling that the corporate directors must permit electronic discovery of their personal email accounts is the fact that these individual did *not* maintain a business email account, but rather conducted business on personal email accounts. *Royal Park Investments*, 2016 WL 5408171 at *8. As noted above, Mr. Dandekar utilizes a Blue Matter email account when conducting business. Blue Matter already agreed to search this account.

### C.   Precision's Definition of "Market Access" In Its Discovery Requests

Precision's claims against the Individual Defendants revolve around a contention that their employment with Blue Matter was competitive with Precision because Blue Matter allegedly engages in "Market Access" projects for clients. So-called "market access" projects are a limited sub-specialty in the general pharmaceutical consulting services business.

Precision's definition of "market access" in its discovery requests, however, is so broad as to encompass all pharmaceutical projects, not just market access projects. It includes phrases such as "driving product growth," "product positioning," "product promotion" and others that essentially encompass all of pharmaceutical consulting, not just "market access" pharmaceutical consulting.

**SheppardMullin**

Hon. Sarah L. Cave
November 23, 2020
Page 8

The definition is so broad as to in fact be meaningless. Blue Matter proposed an alternative definition that deletes the broad phrases and focusing on "payers" of pharmaceutical services, which is the focus of "market access" consulting.

Precision has provided no specific information as to why Blue Matter's definition of "market access" is deficient.  And it was Precision, through their complaint and discovery requests, that put the definition of "market access" at issue. But Precision attempts to skirt their own limitation by defining market access effectively to be all pharmaceutical consulting services. Precision cannot have it both ways. Market access is market access. Precision cannot expand the scope of discovery by misleadingly defining the scope of the business that it is actually concerned about in this case as alleged in its complaint.

*       *       *

Thank you for your consideration of this request.

Respectfully submitted,

Jonathan Stoler
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:4813-7329-1730.6

45057859.1