UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRECISION MEDICINE GROUP, LLC,
PRECISIONADVISORS GROUP, INC., and PRECISION
MEDICINE GROUP HOLDINGS, INC.,

                Plaintiffs,

   -v-

BLUE MATTER, LLC, NAINA AHMAD, JOSE JAUREGUI,
and MRIDUL MALHOTRA,

                Defendants.

CIVIL ACTION NO.: 20 Civ. 2974 (PGG) (SLC)

**DISCOVERY ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.    **INTRODUCTION**

Plaintiffs Precision Medicine Group, LLC, PRECISIONadvisors Group, Inc., and Precision Medicine Group Holdings, Inc. (collectively, "Precision") bring suit against Blue Matter, LLC ("Blue Matter")[1] alleging that Blue Matter, a direct business competitor, unlawfully targeted Precision's employees and trade secrets to the detriment of Precision's business operations. (ECF No. 42). Precision asserts claims against Blue Matter for violations of the Defend Trade Secrets Act, Aiding and Abetting Breach of Fiduciary Duty and Duty of Loyalty, Tortious Interference with Contract, Tortious Interference with Prospectus Economic Advantage, Misappropriation of Trade Secrets and Confidential Information, Violation of the Pennsylvania and New Jersey Uniform Trade Secrets Acts, and Unfair Competition. (ECF No. 1).

---

[1] Also named as Defendants are Naina Ahmad, Jose Jauregui, and Mridul Malhotra (the "Individual Defendants"), but Precision has dismissed Malhorta, and is in the process of negotiating settlements with the remaining Individual Defendants, and the discovery disputes addressed in this Discovery Order are not directed to them. (ECF Nos. 97, 105).

On October 28, 2020, the Honorable Paul G. Gardephe referred this action to the undersigned for general pretrial management.  (ECF No. 88).  Now before the Court are discovery disputes concerning:  (1) Blue Matter's search terms for electronically-stored information ("ESI"); (2) whether Blue Matter should search for and produce ESI from the personal email accounts of Ashwin Dandekar, Blue Matter's founder and managing partner; and (3) the definition of "Market Access" Precision used in its discovery requests.  (ECF No. 104).  The Court resolves each dispute in turn.

## II.   DISCUSSION

### A.  Legal Standards

Parties are entitled to discovery of documents in the "possession, custody or control" of other parties, Fed. R. Civ. P. 34(a)(1), provided the documents are "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."  Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).  Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The party seeking discovery bears the burden to demonstrate relevance, after a showing of which "it is up to the responding party to justify curtailing discovery."  Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012).  Even if the documents sought are relevant, a court must limit discovery if the request is, inter alia, "unreasonably cumulative or duplicative," or "can be obtained from

some other source that is more convenient, less burdensome, or less expensive" Fed. R. Civ. P. 26(b)(2)(C).  "[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." Harris v. Bronx Parent Hous. Network, Inc., No. 18 Civ. 11681 (GBD) (SN), 2020 WL 763740, at *2 (S.D.N.Y. Feb. 14, 2020) (citing Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)).  With respect to ESI, "the party from whom discovery is sought must show that the information is 'not reasonably accessible because of undue burden or cost.'" Thomas v. City of N.Y., 336 F.R.D. 1, 2 (E.D.N.Y. 2020) (citing Fed. R. Civ. P. 26(b)(2)(B)).  As one court in this District has aptly commented, there exists "the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords'" to be used in searching and producing ESI. William A. Gross. Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D 134, 134 (S.D.N.Y. 2009).

### B.  Blue Matter's ESI Search Terms

On July 2, 2020, Precision served on Blue Matter document requests that included proposed ESI search terms ("Precision's First Search Terms").  (ECF No. 104 at 1).  Blue Matter ran Precision's First Search Terms, and on October 23, 2020, provided hit counts to Precision. (Id. at 2).  On October 29, 2020, the parties participated in a meet-and-confer, at which time Blue Matter represented that Precision's First Search Terms yielded over 40,000 hits, or over 60,000 inclusive of document families, a volume that Blue Matter described as unduly burdensome.  (Id.) On November 3, 2020, Precision sent Blue Matter a revised set of search terms containing numerical connectors designed to limit the number of hits ("Precision's Second Search Terms"). (Id.)  On November 9, 2020, the parties participated in a second meet-and-confer during which

Blue Matter reported that Precision's Second Search Terms yielded over 30,000 hits, or over 55,000 inclusive of families. (Id.) Blue Matter then provided to Precision alternative search terms (the "Blue Matter Search Terms"). (Id.)

Precision asserts that the Blue Matter Search Terms are deficient insofar as they improperly excluded: (i) the terms "noncompet*, nonsolicit*, non-disclosure, covenant*, compet* and (employment AND obligation*)" in connection with the names of the Individual Defendants; and (ii) all communications between the Individual Defendants and Blue Matter employees other than Dandekar unless a client name was mentioned. (ECF No. 104 at 2). Precision asked Blue Matter to proceed with Precision's Second Search Terms or propose further limitations, such as tighter numerical connectors. (Id.) On November 18, 2020, Blue Matter responded with hit counts and a proposal to delete certain terms and impose limits on numerical connectors. (Id.) Precision responded the next day, rejecting Blue Matter's deletion of, inter alia, "market /25 access" or other related words, and proposing a compromise set of terms ("Precision's Third Search Terms"). (Id. at 3). On November 20, 2020, Blue Matter reported that Precision's Third Search Terms yielded 47,000 documents including families, at which time the parties sought the Court's intervention. (Id.)

Precision argues that 47,000 documents including families is not an unreasonable volume of emails to review, either manually or through technology assisted review ("TAR"), and asks the Court to direct Blue Matter to proceed with Precision's Third Search Terms. (ECF No. 104 at 4).

Blue Matter argues that Precision's Third Search Terms, which consists of 227 terms and yields over 47,000 hits is unreasonable volume that would take over 470 hours to review and produce, assuming a review of 100 documents per hour. (ECF No. 104 at 6; ECF No. 104-4). Blue

Matter proposes eliminating twelve terms (the "Twelve Terms"),[2] which will reduce the hit count to 17,714.  (Id.)  Blue Matter argues that these Twelve Terms are not relevant to the "heart of this matter, but rather are aimed at obtaining documents relating to Blue Matter's general business activities," which, Blue Matter says, are "irrelevant."  (Id.)  Blue Matter asserts that the Twelve Terms are generic, and Precision has failed to demonstrate, as it is required to do under Fed. R. Civ. P. 26(b)(1), why they will produce relevant documents.  (Id.)  Therefore, Blue Matter asks the Court to permit it to proceed with its revisions to Precision's Third Search Terms, that is, deducting the Twelve Terms, resulting in the terms set forth on Exhibit E ("Blue Matter's Second Search Terms").  (Id.; ECF No. 104-5).

A court-ordered compromise is necessary to resolve the parties' dispute.  See Trusz v. UBS Realty Investors LLC, No. 09 Civ. 268 (DJS), 2011 WL 1628005, at *7 (D. Conn. Apr. 27, 2011) (revising parties' disputed list of search terms).  In contrast to the other terms on Precision's Third Search Term list, the Twelve Terms (with one exception discussed below) are broad and non-specific, without an apparent connection to the people, events, or trade secrets at issue in this action.  Of the Twelve Terms, the only one with particular connection to the key issues in this action is the fourth, "Kelly /5 (Scull OR Precision OR ISA OR Naina OR Ahmad OR Jay OR Jose OR Jauregui OR Mridul OR Malhotra)" (the "Fourth Term").  (ECF No. 104-6 at 2).  Scull is a former Precision and now current Blue Matter employee, and each of the other names refers to a party to this action.  (ECF No. 104 at 5).  Inclusion of the Fourth Term yields only 1,190 additional unique hits for Blue Matter's review, which does not greatly expand the volume that Blue Matter must

---

[2] The Twelve Terms are actually each a lengthy string of multiple terms with multiple connectors, which are too lengthy to list here, and the Court simply incorporates them by reference.  (See ECF No. 104-6 at 2–5).

review.  (Id.)  Therefore, the Court finds that the Fourth Term is sufficiently specific and narrowly tailored, and will not be unduly burdensome for Blue Matter's review.

Accordingly, the Court ORDERS Blue Matter to proceed with its ESI search using (i) Blue Matter's Second Search Terms, PLUS (ii) the Fourth Term.

### C.  Personal Emails of Dandekar

Precision asks Blue Matter to search the personal email accounts of Ashwin Dandekar, Blue Matter's founder and managing partner.  (ECF No. 104 at 4).  Precision alleges that Dandekar "had a longstanding personal relationship with the Individual Defendants," advised Ahmad and Jauregui about Precision's acquisition of their former employer, Insight Strategy Advisors ("ISA"), and solicited the Individual Defendants "to leave Precision and join Blue Matter in violation of their restrictive covenants."  (Id.; see ECF No. 42 ¶¶ 39, 71).  Precision argues that Blue Matter has the "practical ability" to obtain Dandekar's personal emails and "it is reasonable to assume" that Dandekar used his personal email accounts to communicate with the Individual Defendants, who have admitted that they communicated with each other via text message.  (ECF No. 104 at 4 (citing Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14 Civ. 04394 (AJN) (BCM), 2016 WL 5408171, at *1 (S.D.N.Y. Sept. 27, 2016) & Alter v. Rocky Point Sch. Dist., No. 13 Civ. 1100 (JS) (AKT), 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014)).

Blue Matter represents that "Dandekar did not use his personal email accounts for Blue Matter business," and points out that Precision has proffered no evidence to the contrary.  (ECF No. 104 at 7).  Blue Matter notes that the Individual Defendants have not admitted to communicating with Dandekar via his personal email, and given the admission that they did communicate by text, Blue Matter has produced those text messages.  (Id.)  Blue Matter points

out that Dandekar is not a defendant himself, and distinguishes <u>Royal Park</u>, where the court required searches of the corporate directors' personal email accounts because they did not maintain business email accounts.  (<u>Id.</u>)

Under the scope of discovery permitted by Federal Rule of Civil Procedure 26(b), a party may obtain discovery of documents or other items "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "If the party from whom production is sought does not actually have the document in hand, courts look to see whether the party has control of it, construing the word 'control' broadly."  <u>Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.</u>, 233 F.R.D. 338, 341 (S.D.N.Y. 2005).  The Court presumes, for present purposes, that Blue Matter has "control," <u>i.e.</u>, the "right, authority, or practical ability to obtain" Dandekar's personal emails.  <u>In re NTL, Inc. Secs. Litig.</u>, 244 F.R.D. 179, 195 (S.D.N.Y. 2007).  What is absent here is "some justification for [Precision's] suspicion that relevant emails may be contained" in Dandekar's personal email accounts.  <u>CA, Inc. v. AppDynamics, Inc.</u>, No. 13 Civ. 2111 (WFK) (SIL), 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014).  In <u>CA, Inc.</u>, the court compelled a search of the executive's personal email accounts because the executive "testified that on at least one occasion he forwarded an email from his [corporate] email account to his personal email account for backup purposes," and "[o]n other occasions, [he] would send work emails of his notes concerning [the product at issue] to his personal email account . . ."  <u>Id.</u>  Absent from the record here is any basis on which to conclude that Dandekar forwarded any Blue Matter emails, or emails with the Individual Defendants on matters relating to this action, to his personal account. The Court is also not persuaded by Precision's reliance on <u>Royal Park</u>, where the directors did not have a corporate email account and therefore <u>only</u> used an external account for communications

about matters relating to the company, 2016 WL 5408171, at *6, or <u>Alter</u>, where the court
addressed the different question of whether the school district had a duty to preserve "work-
related ESI" no matter what type of device on which it was stored.  2014 WL 4966119, at *10.

Accordingly, the Court finds that Precision has failed, at this time, to show any justification
to search Dandekar's personal email accounts for responsive ESI.  Should further discovery reveal
a valid justification for such a search, Precision may renew its request.

### D.  Definition of Market Access

In its discovery requests to Blue Matter, Precision defined various terms, including
"Market Access."  (ECF No. 104 at 5).  Blue Matter objected to Precision's definition as
overinclusive and proposed a definition that Precision claims "eliminate[ed] certain key terms."
(<u>Id.</u>; ECF No. 104-3).  Precision insists on using its definition "to discover evidence regarding Blue
Matter's provision" of market access services.  (ECF No. 104 at 5–6).

Blue Matter argues that Precision's definition of "Market Access" "is so broad as to
encompass all pharmaceutical projects, not just market access projects," which Blue Matter says
"are a limited sub-specialty in the general pharmaceutical consulting services business."  (ECF
No. 104 at 7).  Blue Matter claims Precision's definition "is so broad as to in fact be meaningless,"
and asks the Court to adopt its definition "that deletes the broad phrases and focus[es] on
'payers' of pharmaceutical services, which is the focus of 'market access' consulting."  (<u>Id.</u> at 8).

The Court has reviewed the parties' competing proposals and orders that they employ
the following definition of Market Access:

"Market Access" means any strategies, activities, and/or processes related to
accessing markets for pharmaceutical products.  These strategies, activities, and
processes include, but are not limited to:  (i) demonstrating the value of new
treatments to Payers (defined as governments, insurance companies, physicians,

or hospital administrators who make pharmaceutical funding, payment, or purchase decisions); (ii) maximizing product value to Payers; (iii) dividing a product's target Payer market into discrete segments; (iv) optimizing market penetration; (v) determining and refining product pricing, discounts, rebates or other contracting terms for Payers; (vi) negotiating reimbursement levels; (vii) navigating increasing levels of Payer controls; (viii) increasing the use of health economics and outcomes research; (ix) navigating distribution challenges, developing contracting strategies; and (x) analyzing pricing, prescribing, utilization, reimbursement data, and market conditioning with Payers, Payer account management and customer engagement, Payer marketing and tactical account management planning monitoring, evaluation, and refinement.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1.   Blue Matter proceed with its ESI search using (i) Blue Matter's Second Search Terms, PLUS (ii) the Fourth Term;
2.   Precision's request that Blue Matter be directed to search Dandekar's personal email accounts is DENIED WITHOUT PREJUDICE; and
3.   The parties employ the definition of Market Access revised by the Court in this Order.

The Clerk of Court is respectfully directed to close ECF No. 104.

Dated:      New York, New York
            December 15, 2020

SO ORDERED

_____
SARAH L. CAVE
United States Magistrate Judge