UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECISION MEDICINE GROUP, LLC, PRECISIONADVISORS GROUP, INC., and PRECISION MEDICINE GROUP HOLDINGS, INC., <br><br> Plaintiffs, <br><br> -v- <br><br> BLUE MATTER, LLC, <br><br> Defendant. | CIVIL ACTION NO. 20 Civ. 2974 (PGG) (SLC) <br><br> **ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.        INTRODUCTION

We presume the reader's familiarity with the background in this trade secrets action in which Plaintiffs Precision Medicine Group, LLC, et al. ("Precision") asserts that Defendant Blue Matter, LLC ("Blue Matter") lured Precision's employees and induced them to violate non-compete and non-solicitation agreements in order to misappropriate Precision's trade secrets relating to market access services in the pharmaceutical industry. See Precision Medicine Grp., LLC v. Blue Matter, LLC, No. 20 Civ. 2974 (PGG), 2025 WL 2695689, at *1–7 (S.D.N.Y. Sept. 22, 2025) ("Precision I").  Now before the Court is the parties' dispute over a slide deck that Blue Matter prepared for a client and asserts is "privileged."  (Dkt. No. 233 at 2 n.6 (the "Presentation"); see Dkt. No. 226 at 4).  Following a conference with the parties on December 30, 2025, the Court directed Blue Matter to submit the Presentation for in camera review.  (Dkt. Nos. 228; 234; 235).  Having now conducted the in camera review, the Court finds that the Presentation is not privileged and therefore, Blue Matter must produce it.

## II.    BACKGROUND

### A.  The Presentation

The Presentation is a series of PowerPoint slides that Blue Matter prepared for its pharmaceutical client (the "Client") regarding the pricing and contracting strategy for a prescription medication (the "Drug").  Each slide is labeled "DRAFT DOCUMENT SUBJECT TO REVIEW – ATTORNEY CLIENT PRIVILEGED."  The Presentation summarizes the work Blue Matter performed (primarily, interviews of pharmaceutical market stakeholders), describes insights from Blue Matter's research at clinics and hospitals, and provides recommendations for the Client's strategies for pricing the Drug.  Blue Matter's Chief Financial Officer, Kevin Jacobs ("Mr. Jacobs"), attests that Blue Matter prepared the Presentation as part of an engagement for the Client's legal department, (Dkt. No. 233-3 ¶ 9), which has "instructed that the work was privileged."  (Dkt. No. 233 at 2 n.6).

## III.    DISCUSSION

### A.  Legal Standard

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).[1]  Under federal law, the attorney-client privilege applies only if all the following are met:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing

---

[1] Internal citations and quotations are omitted from case citations unless otherwise indicated.

a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–59 (D. Mass. 1950)). Under New York law, for the privilege to apply, the communication must have been made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377–78 (1991). The communication must also "be primarily or predominantly of a legal character." Id. at 378. In evaluating whether the privilege applies, the "critical inquiry" is "whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Id. at 379.

The party invoking the attorney-client privilege bears the burden of demonstrating that the privilege applies. See In re Grand Jury Procs., 219 F.3d 175, 182 (2d Cir. 2000) ("In re Grand Jury I"); United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995); Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 470–71 (S.D.N.Y. 1993); Spectrum, 78 N.Y.2d at 377. To meet this burden, the party asserting the attorney-client privilege must show that the communications were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012). This burden is "not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 225 (2d Cir. 1984). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142

3

(E.D.N.Y. 2014).  As this Court has explained, "the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client."  In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14 MD 2542 (VSB) (SLC), 2020 WL 8465433, at *2 (S.D.N.Y. Oct. 30, 2020) (quoting Bank Brussels, 160 F.R.D. at 441–42).

The mere fact, however, that a document was transmitted between an attorney and a client does not render the document privileged.  See Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 139 F.R.D. 295, 300 (S.D.N.Y. 1991).  Rather, it "must contain confidential communication relating to legal advice."  Id.; see Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *1 (S.D.N.Y. Nov. 2, 2001) (rejecting argument that "any reference to any communication between [a client] and one of his attorneys on any document shields that entire document from disclosure, whether or not the document reveals communications made by [the client] to his attorneys in confidence and for the purpose of obtaining legal advice.").  Conversely, "the mere fact that a document contains some public or nonconfidential information does not necessarily make the document discoverable."  Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 103 (S.D.N.Y. 2002).  Similarly, "just as facts cannot be invested with privilege merely by communicating them to an attorney, so [too] the confidentiality of the communication is not [necessarily] destroyed by disclosure of the underlying facts."  Solomon v. Sci. Am., Inc., 125 F.R.D. 34, 37 (S.D.N.Y. 1988).

"The attorney-client privilege was designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and [the] administration of justice.'"  TVT Recs. v. Island Def Jam Music Grp.,

214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quoting Upjohn, 449 U.S. at 389). "Because the privilege 'stands in derogation of the public's right to every [person]'s evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" TVT Recs., 214 F.R.D. at 144 (quoting In re Grand Jury I, 219 F.3d at 182); see Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019) ("The privilege is narrowly construed because it renders relevant information undiscoverable."); accord Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2021 WL 4312026, at *3 (S.D.N.Y. Sept. 22, 2021).

Finally, "[t]he party invoking the privilege also has the burden to show that the privilege has not been waived." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 391 (S.D.N.Y. 2015). "It is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or a stranger to the attorney-client relationship." Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004). In addition, "the privilege may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); see United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (explaining that a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). Thus, the party invoking the privilege must also show "'that the communications between client and attorney were made in confidence and have been maintained in confidence.'" Denney, 362 F. Supp. 2d at 412 (quoting In re Horowitz, 482 F.2d 72, 81–82 (2d Cir. 1973)).

### B. <u>Application</u>

The Court finds that Blue Matter, as the party invoking the privilege, has failed to meet its burden of demonstrating that attorney-client privilege applies to the Presentation. Assuming, for the purposes of our analysis, that the Presentation was confidential between Blue Matter and the Client — the second factor listed above — Blue Matter has failed to demonstrate the other two factors required for the privilege to apply.

First, the Presentation gives no indication that it was a communication between the Client and its attorney. Blue Matter, which prepared the Presentation, is "'a consulting company' that provides services to pharmaceutical and life sciences companies[,]" not a law firm or legal services organization. <u>Precision I</u>, 2025 WL 2695689, at *2; <u>see</u> <u>Sec. & Exch. Comm'n v. Alderson</u>, 390 F. Supp. 3d 470, 476 (S.D.N.Y. 2019) (finding that attorney-client privilege did not apply where party "could not have reasonably believed that [] compliance professionals were acting as attorneys."). The fact that the Presentation labels itself "ATTORNEY-CLIENT PRIVILEGED" is not sufficient, let alone dispositive, as to the Presentation's status as privileged. <u>See</u> <u>Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't</u>, 486 F. Supp. 3d 669, 692 (S.D.N.Y. 2020) (noting that "the label affixed to a document is not itself dispositive as to whether the privilege applies."); <u>Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc.</u>, No. 11 Civ. 6189 (DLC), <u>et</u> <u>al.</u>, 2014 WL 1327952, at *3 (S.D.N.Y. Apr. 3, 2014) (finding that privilege label on document was "an insufficient basis to conclude that it is privileged.").

Second, even if we accept Mr. Jacobs' representation that Blue Matter prepared the Presentation for the Client's legal department, (Dkt. No. 233-3 ¶ 9), Blue Matter fails to explain how the Presentation was "for the purpose of obtaining or providing legal assistance." <u>Brennan</u>

6

Ctr. for Just., 697 F.3d at 207.  And our in camera review does not persuade us that the Presentation was "primarily or predominantly of a legal character."  Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 104 (S.D.N.Y. 2007).

Blue Matter says little in support of invoking the privilege, but to the extent it may be invoking the functional equivalent doctrine, that effort too, falls short.  "Under the functional equivalent doctrine, where a consultant serves as a de facto employee of a company, communications between the consultant and the company's lawyers are protected by the attorney-client privilege[.]"  Walsh v. CSG Partners, LLC, 544 F. Supp. 3d 389, 392 (S.D.N.Y. 2021).  "The Second Circuit has yet to adopt the doctrine, 'and some district courts have expressed skepticism about whether it would do so.'"  Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 315072, at *9 (S.D.N.Y. Jan. 19, 2023).  To assess whether Blue Matter was the functional equivalent of an employee of the Client, however, we would need to evaluate several factors,[2] but the footnote in Blue Matter's letter and single paragraph in Mr. Jacobs' declaration do not contain any of the information that would assist us in that evaluation.  (Dkt. Nos. 233 at 2 n.6; 233-3 ¶ 9).  See Monterey Bay, 2023 WL 315072, at *15 (finding that party failed to demonstrate that outside advisors were functional equivalent of employees).

---

[2] Factors relevant to evaluating functional equivalence include: "(1) whether the consultant had primary responsibility for a key corporate job; (2) whether the consultant had a continuous and close working relationship with the company's principals on matters critical to the company's position in litigation; (3) whether the consultant is likely to possess information possessed by no one else at the company; (4) whether the consultant exercised independent decision-making on the company's behalf; (5) whether the consultant serves as a company representative to third parties; and (6) whether the consultant sought legal advice from corporate counsel to guide his or her work for the company."  Walsh, 544 F. Supp. 3d at 392.

Similarly, to the extent that Blue Matter may be invoking the <u>Kovel</u> doctrine,[3] pursuant to which "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client[,]" that effort similarly falls short. <u>U.S. Postal Serv. v. Phelps Dodge Refining Corp.</u>, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (quoting <u>Fed. Trade Comm'n v. TRW, Inc.</u>, 628 F.2d 207, 212 (D.C. Cir. 1980)).  Our review of the Presentation indicates that the Client's legal department engaged Blue Matter to interview and analyze data from market stakeholders "primarily to provide technical services and not to interpret confidential client information." <u>ECDC Env't v. N.Y. Marine & Gen. Ins. Co.</u>, No. 96 Civ. 6033 (BSJ) (HBP), 1998 WL 614478, at *8 (S.D.N.Y. June 4, 1998) (holding that attorney-client privilege did not apply to consultants who analyzed external test data and provided technical assistance rather than "translat[ing]" for the benefit of attorneys); <u>see</u> <u>U.S. Postal Serv.</u>, 852 F. Supp. at 161–62 (holding that attorney-client privilege did not apply to consultants who "based their opinions on factual and scientific evidence they generated through studies and collected through observation. . . .").

Accordingly, we conclude that Blue Matter has failed to demonstrate that the attorney-client privilege applies to the Presentation, and Blue Matter must produce the Presentation to Precision.

---

[3] <u>United States v. Kovel</u>, 296 F.2d 918 (2d Cir. 1961).

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Presentation is not privileged, and by

**January 19, 2026**, Blue Matter must produce the Presentation to Precision.

Dated:        New York, New York
              January 5, 2026

SO ORDERED.

SARAH L. CAVE
**United States Magistrate Judge**

9